## In re Reading Country Club Corporation

*Emerson B. Rasbridge*, for appellant.

*Martin F. Hatch*, Special Deputy Attorney General, for Liquor Control Board.

MAYS, J., May 29, 1944.—The Pennsylvania Liquor Control Board refused to issue a club liquor license to the Reading Country Club Corporation, appellant, for the following reasons:

"1. The Quota Law, approved June 24, 1939, provides for a quota of four retail licenses for Exeter Township, Berks County, and there are 16 retail licenses in effect at the present time which are counted against the said quota. Therefore, the board is prohibited from issuing any new retail licenses in the said township, except for bona fide hotels complying with the physical requirements prescribed by the Quota Law.

"2. Your organization has not been in continuous existence as a corporation for a period of at least one year, as required by the law."

On August 22, 1942, in In re Reading Police Home Association Club Liquor License Application, 35 Berks 28, and again on February 23, 1943, in In re Appeal by the St. Marco Society, 35 Berks 239, we decided that the Liquor License Quota Law is not applicable to clubs. We have again carefully studied this matter, and we find no reason to reverse our opinions heretofore rendered. The first reason assigned by the board is invalid.

Article I, sec. 2, of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as last amended by the Act of May 21, 1943, P. L. 403, in part reads as follows:

" 'Club' shall mean any reputable group of individuals associated together not for profit for legitimate

purposes of mutual benefit, entertainment, fellowship or lawful convenience, having some primary interest and activity to which the sale of liquor shall be only secondary which, if incorporated, has been in continuous existence and operation for at least one year. . . .''

Counsel for the Pennsylvania Liquor Control Board stated at the hearing: "It is very evident from a study of the files and the facts . . . that this club qualifies in every respect in all physical requirements that are outlined by the law and in the spirit and the letter of the definition of a club . . . excepting the provision with respect to continuous existence as a corporate body for at least one year."

This too appears: "In all due fairness to this applicant, I must say that it is evident that the background of this organization indicates that this is a successor organization to one which existed for many years, and a very reputable organization, conducting a place that is of a very high type and caliber."

We appreciate the position taken by the Liquor Control Board and agree that no license can be issued to this club unless it can be rightly concluded that it was in continuous existence and operation for at least one year.

"Continuous existence and operation" are words that must not under all circumstances be given their strictest meaning. The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 52, states:

"(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable."

Manifestly, the legislature had this rule of construction in mind when it said in its definition of a club: "Continuous existence must be proven by satisfactory evidence." Is there such satisfactory evidence in the present record?

Mr. Hatch frankly stated on behalf of the Liquor Control Board that "we are satisfied that but for the

legal fiction as it were of the new entity stepping in . . . there is a continuous existence for many years".

Many years ago citizens of this county organized a Reading Country Club. During the depression, and because of a cumbersome overhead, it became financially involved. A receiver was appointed by the Federal court, and later a trustee, Wellington M. Bertolet, Esq., serving in both capacities. About 75 percent of what was the membership prior to the receivership interested themselves in perpetuating the Reading Country Club, with the result that after some financial arrangements these old members and some new ones elected a board of directors and officers, many of whom were officers before the receivership. These men, prior to December 1943, necessarily were active in arranging for the reorganization of the club. They had but one object in view—to keep up and maintain "a particular condition", viz, to carry forward as a Reading Country Club. There are no physical changes in the buildings and the premises generally are now as they were prior to the receivership.

The words "continuous existence and operation" must receive a common-sense construction. From all the testimony we find that the personnel and membership of the applicant are substantially, and its property and function identically, the same as they have been for more than the last 10 years, and we are of the opinion that the applicant is not one of those to whom the regulations intended that a license should not issue.

We are of the opinion that the second reason assigned by the board to sustain its refusal to issue the license to this applicant is without force, and that the appeal should be sustained.

We would ordinarily refer this matter back to the board for further hearing so that it could determine in its discretion whether or not a license should be granted to the applicant. That, we believe, is the proper way

to proceed in matters of this kind. This we would do here but for the fact that the Liquor Control Board in passing upon this matter did more than merely act upon what it conceived to be a fixed rule of law. As appears from the statement made by its counsel, it would, according to the particular circumstances of this case, except for what it conceived to be a prohibition of the law, have granted a license. Under these circumstances it would be useless to send the case back to the board.

And now, to wit, May 29, 1944, the appeal of the Reading Country Club Corporation is sustained, and the Pennsylvania Liquor Control Board is hereby ordered and directed to issue a club liquor license to the Reading Country Club Corporation for its premises situated in Exeter Township, Berks County, Pa. Appellant is directed to pay the costs of this proceeding.